Attorney Lucas Watson for Mr. Gibson, let's just wait for the government to come up. The issue before the court in this case is whether or not this case should be remanded or returned to the lower court or the district court for re-sentencing, namely whether or not the enhancement or double counting that occurred in this matter should not have occurred and also whether or not the gun trafficking constitutes relevant conduct. Let me just ask you before we get into those two, which I understand to be your arguments here, on the, it's clear that you, I think you argued the double counting below.  You did not argue the relevant conduct question before Judge Nagala, is that right? No. That question was not. So we're on plain error on the relevant conduct question and ordinary review on the, okay. Thank you. Yes, Your Honor. Yes, Your Honor. So, as the court is probably well aware in this case, this is a case in which after a factual hearing, the court made finding that both 2K2.1B5 and 2K2.1B6, B6B both applied to this matter and in terms of the gun trafficking, our position was that based on law that was cited, namely USP Maloney. Counsel, can I ask you a question? Sure, Your Honor. The government says that you, you're not disputing any of the factual findings and it's only a straight legal question that you, argument that you're making, is that, is that right? That, that would be accurate. My, my position is that the, it's double stacking because everything just occurs out of the same transaction or the same event. So. Sorry, go ahead. So all, in Judge Nagala's decisions after the factual hearing where she lays out various factual findings that she makes, you're not contesting any of those? Well, what I'm not contesting, Your Honor, is the fact that this was an incident where both enhancements were applied to the same set of facts. So in terms of the facts, you know, no. Enhancements are always applied to the same set of facts, right? Like they're different, there's different characteristics of the offense that merit an enhancement. Yes. So it's not automatically erroneous if you're applying different enhancements to the same set of facts, right? Yes, but based on. The guidelines themselves say, you know, you shouldn't do this application of these two enhancements at the same time. Then we follow that, right? Yes. There's no principle that you can only apply one enhancement to one offense, right? Well, based on law, that was cited, Your Honor. There was law in hand that says, hey, you can't. Well, that's all right. So, so that the case in Young, it looks at application note 13D, right?   Yes, Your Honor. And it says in a case in which, the application note says in a case in which three or more firearms were both possessed and trafficked, apply both subsections B1 and B5. If the defendant used or transferred one of such firearms in connection with another felony offense, i.e. an offense other than a firearms possession or trafficking offense, an enhancement under subsection B6B would also apply, right? And B6B, that's the, that's the in connection with another felony enhancement. Um, so Young says that because it doesn't mention the prong of B6, that says with the knowledge or reason to know that it's going to be used in a felony isn't mentioned in this application note, you should not apply that enhancement when you have a trafficking offense, right? Yes, Your Honor. But that's not what happened in this case, right? In this case, the district court says, uh, I am relying on the prong that is possessing a firearm in connection with another felony offense because he's engaging in a drug transaction, uh, or a guns for, a gun for drugs transaction. And so that's possessing a gun in connection with a drug transaction, right? With the trafficking. So under the application under Young, that's the prong of B6 that still does apply. Well, Your Honor, it's, it's in connection with this trafficking, um, event where he was, um, mainly using the guns, the drugs to procure the guns and to engage in gun trafficking. Um, that's what our position is in this matter. And that's why we don't believe from a double counting standpoint. Your position is what? That he was mainly procuring the guns for gun trafficking. So because of that, the double counting should not apply. So that actually shows why it's not really double counting as you describe it because he's doing drug trafficking, right? And then he also engages in this specific transaction of guns for drugs. Yes. So in addition to being engaged in drug trafficking, so you get the trafficking enhancement, the district court's relying on a separate transaction where he's possessing a gun as part of a drug deal. And that shows that he's doing it, he's possessing the gun in connection with a felony offense that's different than the trafficking offense, right? Well, but they all flow from the same relevant facts, the same relevant, um, course of conduct that these two gentlemen engaged in. So that's why our position is that it should not apply. Okay. Okay. So as previously stated, um, we believe that the double counting should not apply. As for, um, relevant conduct, our position is that specifically there was no specific finding as to whether or not the single firearm that he possessed, um, that he procured from a family member was relevant to this case. Um, as I cited, um, in my, in my brief, there was, uh, one particular firearm that he procured from a family member, um, you know, in relation to that family member being arrested. And that, that firearm, um, it was something separate and distinct. And from our position, that does not constitute relevant conduct and there was no finding. But you said you're not, um, you're not, uh, contesting the factual findings, right? So we have factual findings that, um, he is an avenue for the firearms dealer to sell guns to people in his business, which is the drug trade, right? Yes. And that the firearms dealer could lay out the guns at the house in which he does drug sales, right? Yes. And that he would make, uh, some kind of commission or some kind of money if he created a connection that led to a gun sale, right? Yes. So doesn't that show that his drug trafficking was intertwined with his participation in firearms trafficking? Yes. Doesn't that make it a course of conduct? As relevant conduct as to that course of conduct. But there was, um, there was facts related to the case in which there was a, one particular firearm that was assessed points for, um, that he procured from a family member. And that's the offense of conviction? Yes. Is the possession of the gun that was from his family member who went to jail that was in the red cooler?  Um, and there's no allegation that that gun was traded for drugs, trafficked, simply being held for a family member who's in jail? Yes, and those are the facts. That it was just simply being held for a family member that was in jail and that was it. Um. And that's the gun that was the basis of the felony possession charge? Is that what you're saying? Yes, Your Honor. And so then what's the upshot of the relevant conduct? So if we, if the district court has these findings that he's doing drug trafficking, uh, as part of his drug trafficking, then that's one course of conduct. So if the, the gun that he had is not relevant conduct, what's the upshot of it? Like he's being charged with being a felon in possession. He's also being charged with drug trafficking, with the drug trafficking and his engagement in firearms trafficking is part of the drug trafficking conduct. So, so what do you even get out of the idea that the, even if we were to agree that the one gun is not relevant to the, to the drug trafficking? I, the upshot for me would be that, um, he shouldn't be assessed a two-point enhancement based upon that one particular firearm. Okay. Okay. Uh, thank you very much, uh, Mr. Watson. You've reserved time for a little, so we'll hear from you again, but let's hear from the government, Mr. Pierpont. Good morning, Your Honors. May it please the Court. John Pierpont on behalf of the United States. I can pick up right where Attorney Watson, uh, left off with this idea of relevant conduct. So I think to state this as succinctly as possible, Mr. Gibson's conviction for illegally possessing a firearm was part of the same course of conduct as his drug dealing. The guns and the drugs were found at the same location. That drug dealing, the evidence that the district court had, extended beyond just that one day. It is true that the charge itself had to do with the possession of the drugs on that particular day, but there was an abundance of evidence that that drug dealing extended, uh, to the months, I think it was 60 to 90 days before that, and that drug dealing was inextricably bound together with the firearm trafficking. So is it the transitive rule of relevant conduct? I mean, we have, you know, because, right, we have with 920, with these gun charges, when the gun is near the drugs, we, let's accept for the moment for the sake of argument, although I don't think there's any evidence that that gun was, um, easily accessible, intended to defend the drugs, any of those things, but if we assume that this is one of those cases that it would be enough to say the gun and the drugs were in the same house. Um, again, I don't even think they were in the same room. No, they were not. But, okay, so even if we assume that for the sake of argument, we then have to have this transitive rule of relevant conduct, where if the felon in possession gun is related to the drugs and the drugs are related to the gun trafficking, that feels like a, um, a dangerous approach, that, um, that that A, if A, you know, A equals B and B equals C, A doesn't necessarily equal C. Yeah, so I think you're right, Your Honor, and just to be clear, I would probably quibble that the drugs and guns weren't related, but you're certainly correct. That's in this gun. In this gun, that's right.  Well, can you point me to anything in the record that ties that gun with those drugs? If you were to take a look at the way that the search warrant happened, and there was no evidence that that was a trafficked firearm, so I can agree with that, but the fact that it had an extended magazine, it was 17 rounds, a green laser on the top of it, it was in a cooler that was right outside of the apartment. On the other side of that apartment door was the kitchen where packaging materials and the like were found. So, you know, it may not be quite on all fours with, say, Harry and Smith, which the government cited in its brief, but this is not as though there was a hunting rifle that was swirled away somewhere in a trophy room with hunting trophies. But there's no evidence that Mr. Gibbs had ever used or intended to use that gun. It was, the evidence was that it was being stored. Yeah, I don't, I think I might respectfully disagree, Your Honor. I think the proximity and the kind of firearm that it was. But an inference. Yeah, certainly. But I think an inference from the evidence of the proximity and the type of firearm that it was, and I think a fair one. Counsel, what did he say at the plea colloquy with respect to that first charge? Yeah, so I think. What gun was he actually talking about, and what did he say about his relationship to it? Yeah, so the specifics of what he said at the plea colloquy, there's no question it was that firearm. I know that there were discussions and admissions that were made where he said that firearm came from somewhere else, that he was holding that on behalf of somebody, I think, who was incarcerated in Vermont or something along those lines. And so the district court still accepted that based on the factual assertions there? Yeah, I think that the district court was able to accept that, certainly, that he was possessing that. I mean, he had constructive possession of that firearm, just because it was somebody else's who happened to be in jail. He was still possessing it to satisfy the elements of 922. But to get back to Your Honor's question, right, so I understand this sort of feels a little bit like a daisy chain, I guess, of relevant conduct. But if you think about what a district court does in connection with this, the first thing that I think is you sort of run it through the 1B3 relevant conduct. So what is the universe of information that is relevant conduct? And the test is laid out, you know, it's all acts and omissions that are a part of the same course of conduct or common scheme or plan. This is Quintero. It's also the comments. And so if you, in fact, look at, you know, what that means in the case law, so this would be in Perdomo. This would also be in the application notes. With respect to a common scheme or plan, you just need acts that are substantially connected by at least one common factor. Right? So that's the victims, the accomplices, victims, accomplices, or purposes. And so here, in determining the, again, I want to be clear, in determining the relevant conduct at the outset, you're going to look at the drug trafficking and you're going to see whether the firearm trafficking is related to that. That's to calculate the 2D offense level. Well, so I think at the outset you calculate all of the relevant conduct. Then you run it through 2D, and you would also run it through 2K, and then you do the grouping analysis and figure out which one. But that is assuming that the two offenses of conviction, you're assuming that all of the relevant conduct is the same for both offenses of conviction.  And I don't know where that comes from. Yeah. So, again, I think when you look at it. Are you assuming it because that is the rule that you're saying that in every case, any defendant who's convicted on multiple counts, all relevant conduct is relevant to all counts? Yeah. So, again, I think if you look, the short answer is yes. So I think if you look at the guidelines and you look at sort of the order of operations that you're supposed to do, the first step, number one, is what is the relevant conduct to which the guidelines are going to apply? And then you would go to 2D, and then you would go as well. And, Judge, I would like, you know, this was, I understand there was some discussion of, I don't think double counting came up that explicitly. It was mostly the government. I'm not worried about double counting right now. I'm worried about the relevant. Okay. I understand where I'm playing. And I think it's an important point, right, because I don't want to lose sight of the fact that the whole reason we had a FATICO hearing, the whole briefing that was set up in advance of it was because everybody sort of assumed that if the government was able to prove this, these items were going to apply. There was no indication below, and this wasn't briefed below. And, you know, it's not a small point, and I understand. That's why we're on plan here. Right. Yeah, that's why we're on plan. But for purposes of sentencing, the district court groups the offenses, right? Yes. And he's not challenging the grouping. No. Right? So if you're sentencing together as a group, then it's got to be that there's one set of relevant conducts. But that's not how the grouping works in this case, right? You do 2D1 separately, and you do 2K. Right. And then you say which one is higher. Correct. So you're adding the increases to each separate count. Yes. And then you are only sentencing based on one of those two guidelines. Right, because that is correct. Because they're so closely connected. But 2K2.1 was higher. Correct. And so. But you do build off the same universe of relevant conducts. I'm sorry. The same universe of facts. That's correct. That's right. So someone can't be indicted on two counts that have different relevant conduct? So I think someone can be indicted on two facts that have different relevant conduct, but you have to apply the test to make a determination as to whether it's relevant in the first place. What if the gun here. Let's say that instead of the gun being in a cooler outside the apartment door next to the kitchen, it was in Mr. Gibson's workplace. It was where he had access to it, but it was clearly a 922G violation. He's clearly a felon. He had the gun.  And at his house was all of the evidence that goes to the drug conviction. Right. Those would be two convictions that he could be two charges. He could plead to both of them. I think assuming by workplace, you mean like an office or somewhere. Yes, in a separate place. Like that he worked 10 miles down the road. Yes, not the kitchen. Okay. Yes, that he was in some other location, but that was his that he had control over. Yes. So I think under those circumstances, it's not so clear to me that when you're at the outset, you're doing your relevant conduct analysis, that you would end up putting them together. But you just told me that's the way we always have to do it. But in every case, all of the relevant conduct is relevant to all of the counts of conviction. But it has to be relevant. Yes, but it has to be relevant in the first instance. To each count of conviction separately. So I don't. Because the gun trafficking would definitely still be relevant to the drug trafficking count, right? The. The gun trafficking. Gun trafficking is relevant to the drug trafficking. But in my hypothetical where the gun is held, we'll say it's in a storage locker instead. Right. In a storage locker solely controlled by Mr. Gibson and he's convicted. Yeah.  Yeah. We would then have a question about whether the gun trafficking is relevant. So that means that we're not starting every case by saying all of the relevant conduct is a single universe. No, I understand what you're saying, Your Honor. And I think my. I want to look at it closer. I do want to be clear. I don't think those are the facts that we have in front of us now. I understand that. But that's why I'm trying to say. I'm not sure I agree with you about the fact. I know I don't agree with you. I understand that. We start with all of the relevant conduct for all of the counts right off the bat.  And we just. If it's relevant to anything, it's relevant to everything. But. But. It has to at least be the case if the offenses are being grouped that you're doing one guideline speculation that's going to cover both. Right. Then you have to consider the conduct underlying both offenses to be relevant. Right. If they were not grouped, maybe there would be a different analysis. Yeah. I think maybe, Your Honor. I think that. I think that may be right, Your Honor. I think what I. Where I'm getting to is that if you look at the counts of convictions themselves also need to be relevant to one another. Right. And so the. I suppose the. Or need to be grouped. So the $20,000 question is do the drugs and guns go together in the first instance. And so. The drugs and this gun. The drug. No, I'm sorry. The drugs and this gun go together in the first instance. And so when you're a hypothetical where you've got a gun at an office 10 miles away. And that there's no indication. And again, that's not these facts here. It may well be that the analysis is slightly different. But because of the close proximity, the nature of the firearm. I'm not sure we need to test the limits of that hypothetical. And that was not and is not objected to by Mr. Gibson. No. Right. The fact that the. The gun. That there's this specific offense characteristic that leads to the grouping. That's correct. That was not objected to below. Counsel, why does the district court use the 2018 guidelines? You just say it's an. That there's an ex post facto problem. And so does the district court. But you don't say what portion. And I don't see any findings about that. I know it's not objected to.  Yeah. It was, in fact, I think because ultimately the total offense level was higher under the revised 2024 version. There was. It was actually, I think, we instead of it being a 32, it would have ended up being a 33. In fact, I know that because of my opening brief, I used the wrong guidelines. And then corrected it in my reply brief. So. And as we indicated in our briefing, there is ex post facto issues. Is that the one that you're referring to in your briefing? Yes, I'm referring to the 2018 throughout our briefing. That is correct. No, no, no. My question is, it doesn't appear to me in the record, although I'm happy to hear where it is, what the ex post facto problem was that led to the application of the earlier guideline. You say it's an ex post facto problem summarily. The district court says it's summarily. And there's no calculation of which one leads to the higher offense level or not. So I think if you were to look at the government's brief, and I think it would be around AA18, the pre-trial brief, which I don't think was a part of the record, but that's the docket number. The government had initially calculated under the actual guidelines range and, in fact, said to the court, hey, the total offense level the government believes will be 33. And that's because there's a five point enhancement. Instead of a four. That's right. And so what ended up happening is then looking at the reply brief and, fortunately, researching it further, the government realized we needed to go under the 2018 instead, and so it was 32. So I'm happy to turn to the Young issue. With respect to the Young issue, I know that it gets a little convoluted, but its application here is actually fairly straightforward. We're talking about the interplay of 2K2.1b5 and 2K2.1b6b. And what Young held is in a B-5 case, in a case where there's firearm trafficking, you can only also apply an enhancement under the first clause of B-6b. That's what the in connection with clause. You cannot imply a plus four enhancement under B-6b under the reason to believe clause, which is the second clause. And, again, the district court was actually pretty clear about this. If you look at AA20, they found that it was, in fact, a B-5 case that firearm trafficking applied. And then it explicitly said that B-6b applied because it was the possession of firearms in connection with another offense, the distribution of narcotics. And so I would disagree with my counsel here that what we're dealing with is the exact same harm. I think it's the Constantinesco case talks about, you know, whether or not it's the actual harm that's fully accounted for in one place or another. Here, the B-5 enhancement had to do with sort of channeling the firearms to the people who were in his line of work, the drug traffickers. That was separate and distinct from the actual one-to-one exchange of the firearm for the drugs that the defendant engaged with with GH. Right. So Young just says that it's only the reason to believe clause that's excluded in the B-5 case.  And I guess it sort of does that just based on a close reading of the application note. But the reasoning would be, what, if you're selling a bunch of illicit guns to a bunch of people, probably ipso facto have reasons to believe they're going to be possessed? Right. I think that was Young's thought process, right? It looked at 13. But you're not necessarily possessing the gun in connection with a felony offense. Like, you're going to commit a felony and have a gun on you, or you use a gun in a felony or something. That's not a necessary feature of trafficking the guns to a bunch of people. I believe that's right, Your Honor. It looked at 13D, and I think it was sort of conspicuous in its silence that it mentioned only the in connection with but didn't talk about the reason to believe. And that's why the Young court held that it would be impermissible double counting to apply the firearm trafficking as well as And that's why here the district court is sort of careful to say that it's predicated on different facts. There's the kind of the trafficking, the gun trafficking is what's going on in the machinery of the drug trafficking. And the in connection with is the trade. You've got it exactly right, Your Honor. And I think the district court was very careful about that, and there was an abundance of evidence on the record for the district court to make that clear. And, you know, when we do an enhancement for, you know, possessing a gun in connection with a felony, usually you're, like, using the gun to commit the felony, right? Yes. That's sort of an odd application that you're using the gun as currency. Yes. Do you think that in connection with covers that scenario? I do, Your Honor, and I think the case law is pretty clear about that. There's the Smith case that's 363 F3rd at 128. It's a 2004 case from this court that says it is clearly in connection with if the firearm is being traded for drugs. So I think you're right that typically we think of a firearm as to secure, but in connection with is for the exchange of a firearm and a drug is squarely. But there's a debate over whether when you use a gun in the commission of a crime, it could be traded for drugs because use might imply that you're using it in the way it normally is used. Right. But the guidelines is broader because it says in connection with possession, not just use, it's possession in connection with. Right. And as I indicated, the Smith case, 363 F3rd at 128, that's this court, stands for that very proposition that it can be in connection with. So unless there are further questions, the government is happy to rest on its submission. It would ask that the district court be affirmed. Thank you. Okay. Thank you very much, Mr. Pierpont. We'll hear from Mr. Watson on rebuttal. Yes, Your Honor. So in hearing counsel's argument, I would say that the court should look at, in terms of relevant conduct, the fact that this one in a particular weapon was not found in proximity to any of the. . . But if you think that this weapon, that your client's possession of this firearm was completely unrelated to the drug trafficking, then why would you say that the district court should group the offenses? No, I would say that the district court should not apply any type of enhancement to this one particular firearm. But as Judge Minasci is pointing out, you didn't object. Paragraph 18 of the PSR says, one of the counts embodies conduct treated as a specific offense characteristic of the other. That is the PSR saying we are linking counts one and two, linking the possession of the red cooler gun to the drug trafficking. And there's no objection lodged to that, right? Yes, there was no objection at the time that was lodged. There's no objection now to that either. The objection now is to the gun trafficking being relevant conduct to the cooler gun, I'm calling it. But there still is not, in the appellate briefing, any objection that the drug trafficking is not related to the cooler gun. Yes, not in the. . . Right, so the way the grouping works, as we were just saying, is because we're grouping them together, you get the benefit of one guidelines calculation that covers both offenses. We just calculate it from the perspective of each offense and just go with the higher one, right? Yes, sir. And so then you have one guidelines calculation that covers both offenses. It's a little much for you to get the benefit of that grouping and then turn around and say, oh, but actually some of these enhancements only apply to one and not the other, and then you can sort of reduce the calculation overall. Again, if we thought they were completely separate, we'd have two different guidelines calculations and maybe they'd have different enhancements. But if you're saying they're appropriately grouped and were to do one calculation, doesn't it have to be that all of the conduct underlying both offenses is relevant to that calculation? No, it doesn't have to be. Why not? Well, from our standpoint, Your Honor, this one particular gun should not have been in the grouping at all. We don't believe that there should have been an enhancement applied for it. Okay. Thank you. Okay, thank you very much, Mr. Watson. The case is submitted.